NOT FOR PUBLICATION

FILED & ENTERED

SEP 02 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Ogier        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

In re:

REXFORD PROPERTIES, LLC,

Debtor.

Case No.: 1:15-bk-12116-MB

Chapter 11

MEMORANDUM OF DECISION RE: USF&G'S OBJECTION TO CLAIM NO. 17 FILED BY 1979 EHRLICH INVESTMENT TRUST [Dkt. No. 223]

MEMORANDUM OF DECISION

On June 20, 2016, the Court held an evidentiary hearing on United States Fidelity & Guaranty Company's ("USF&G") *Motion for Order Granting Trustee's* [sic] *Objection to Claim No. 17 Filed by 1979 Ehrlich Investment Trust* (the "Motion"). Dkt. No. 223. The Motion requests that the Court disallow the unsecured claim held by the 1979 Ehrlich Investment Trust (the "1979 Trust") of $9,738,190.02 in its entirety. While not requested in the Motion, at the June 20 hearing, USF&G alternatively requested that the Court reduce the 1979 Trust's claim rather than disallow it entirely.

The following constitute the Court's findings of fact and conclusions of law pursuant to Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure. For reasons discussed herein, the Court will DENY in part and GRANT in part USF&G's Motion. The 1979 Trust's claim will be allowed in the amount of $5,793,300.00, plus interest of 4.29%, compounded quarterly, from December 19, 2009 to June 16, 2015. The 1979 Trust will be directed to submit a declaration setting forth its calculation of the claim in accordance with this memorandum, and USF&G will have an opportunity to object to such calculation before the Court enters its final order determining the allowed amount of the 1979 Trust's claim as of the petition date.

## I.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a). This matter is a core matter under 28 U.S.C. § 157(b)(2)(A) and (B), and this Court has the constitutional authority to enter a final ruling on the matter. *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

## II.    FACTS

On June 16, 2015 (the "Petition Date"), Rexford Properties, LLC ("Rexford") filed its petition for relief under chapter 11 of the Bankruptcy Code. Dkt. No. 1. On July 21, 2015, Rexford filed its *Schedule F – Creditors Holding Unsecured Nonpriority Claims* showing a debt due to "The 1979 Ehrlich Investment Trust" in the amount of $5,793,301.41 for a "Loan (principal only)." Dkt. No 72. On August 4, 2015, the Court entered an order setting a general bar date of September 9, 2015 for creditors to file their claims. Dkt. No. 85.

**MEMORANDUM OF DECISION**

1    On September 9, 2015, the 1979 Trust filed a timely proof of claim ("POC 17") for an

2  unsecured debt of $9,738,190.02.  POC 17 includes, as exhibits, an installment note dated

3  December 11, 2009 in the sum of $5,793,300.00 (the "1979 Trust Note") and an unrecorded deed

4  of trust purportedly securing the 1979 Trust Note with an interest in unknown real property (the

5  "1979 Trust DOT").[1]    The 1979 Trust Note provides for "interest from December 19, 2009, on the

6  unpaid principal, at the rate of 4.29 percent per annum."  POC 17 at Exh. B.

7    The evidence offered in support of POC 17 shows that the debt memorialized by the 1979

8  Trust Note (the "1979 Trust Debt") originated in 2000.  The charts attached to POC 17 reflect that

9  (i) the 1979 Trust made several loan advances to Rexford between January 1, 2000 and October 8,

10  2007 totaling a principal amount of $6,949,093.00, (ii) Rexford made eight payments to the 1979

11  Trust totaling $1,528,205.00 between November 14, 2000 and December 11, 2009, and (iii) interest

12  accrued on the unpaid debt and was reflected in the principal balance stated in the 1979 Trust Note

13  in 2009.  Lisa Ehrlich[2] testified that the 1979 Trust's debt was finally memorialized in 2009

14  because the 1979 Trust's trustee, Donald Crasnick ("Crasnick") demanded that the 1979 Trust's

15  Debt be memorialized.

16    The testimony confirms that the 1979 Trust calculated the balance of POC 17 as of the

17  Petition Date, by reviewing Rexford's general ledgers and calculating interest at 4.29% from the

18  inception of loans in 2000.  This exercise resulted in a claim balance of $9,738,190.02.  Notably,

19  however, the 1979 Trust Note provides for interest to accrue on the unpaid principal thereunder

20  "from December 19, 2009."  Nothing on the face of the 1979 Trust Note indicates that any interest

21  was to be added to the balance of the note for any period prior to December 19, 2009.

22

23

24  _____

25  [1]    The 1979 Trust DOT indicates that the 1979 Trust Note is secured by real property "which
has the address of Exhibit 'A'," but no such Exhibit A is attached.  Not surprisingly, the 1979 Trust
26  does not contend that POC 17 is a secured claim.

27  [2]    Lisa Ehrlich is both Rexford's managing member and a co-beneficiary of the 1979 Trust.

28

**MEMORANDUM OF DECISION**

### III.    APPLICABLE LAW

A claim is deemed allowed unless a party in interest objects.  11 U.S.C. § 502(a). If such objection is made, after notice and a hearing, the Court shall allow the claim except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

A proof of claim executed in accordance with Fed. R. Bankr. P. 3001 "constitutes prima facie evidence of the validity and amount of the claim." *Lundell v. Anchor Const. Specialists, Inc.,* 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting *Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir.1991)).  The proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Id.*  A successful objection to claim must provide sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Id.* (quoting *In re Holm,* 931 F.2d at 623).

The evidence provided, if believed, must "refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* at 1040.  However, where the proof of claim omits an essential element of the substantive claim, the objector "need only note the absence of any such showing, and does not require evidence in support." *In re Atwood,* 293 B.R. 227, 233 (B.A.P. 9th Cir. 2003).  If sufficient evidence is produced, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.),* 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995).

### IV.    LEGAL ANALYSIS

The Motion requests that POC 17 be disallowed in its entirety for two reasons. First, USF&G contends that the 1979 Trust Debt is actually debt belonging to Lisa Ehrlich, individually, and not Rexford.  Second, USF&G argues that Rexford's books and records do not support a debt due from Rexford to the 1979 Trust in the amount reflected in POC 17.  While the Motion does not request a reduction of the 1979 Trust Debt, at the June 20, 2016 hearing, USF&G requested that if the Court was not inclined to disallow POC 17 in its entirety, the Court should reduce the 1979

3
**MEMORANDUM OF DECISION**

1  Trust Debt from $9,738,190.02 to the principal amount provided for in the 1979 Trust Note,

2  $5,793,300.00.

3  **A. The 1979 Trust Debt is a Debt Incurred by Rexford, Not Lisa Ehrlich.**

4  The Motion contends that the 1979 Trust Debt actually belongs to Lisa Ehrlich,

5  individually, and that it is not Rexford's debt.  USF&G argues that there is absolutely no mention

6  of Rexford anywhere in the 1979 Trust Note.  Moreover, the 1979 Trust Note is signed by Lisa

7  Ehrlich and states, "*I* promise to pay The 1979 Ehrlich Investment Trust . . ." (emphasis added).

8  However, the Court finds this argument unpersuasive and that USF&G has failed to rebut the prima

9  facie presumption that POC 17 is valid.

10  Under California law,[3] a note and deed of trust must be read and construed together.  *In re*

11  *Crystal Properties, Ltd., L.P.*, 268 F.3d 743, 750 (9th Cir. 2001).  USF&G is correct in that the

12  1979 Trust Note does not reference Rexford in any way.  However, the 1979 Trust Note does state,

13  "This note is secured by a Deed of Trust . . . ," and the 1979 Trust DOT does state that the trustor is

14  "Rexford Properties LLC."  Moreover, the 1979 Trust DOT references the exact amount stated in

15  the 1979 Trust Note and also is signed by Lisa Ehrlich.  Lisa Ehrlich testified that the 1979 Trust

16  Debt was always intended to be Rexford's debt and that Court found that testimony credible.

17  Under these circumstances, the Court concludes that the debt is that of Rexford and not Lisa

18  Ehrlich individually.

19  **B. Rexford's Books & Records Support the Validity of the 1979 Trust Debt.**

20  The Motion further contends that the books and records of Rexford do not support the

21  amount of the claimed in POC 17.  USF&G argues that as of December 31, 2013, Rexford's books

22  and records showed and obligation due and owing to the 1979 Trust in the amount of

23  $5,448,849.00.  USF&G attempts to cast doubt on the legitimacy of the debt by arguing that the

24  discrepancy between the amount claimed in POC 17 and the amount stated due and owing on

25  _____

26  [3]   California law applies because the 1979 Trust DOT includes a provision that states that it is
governed by "Federal law and the law of the jurisdiction in which the Property is located."  Lisa

27  Ehrlich testified that the "Property" to which the 1979 Trust DOT refers is the Island Waterpark
located in Fresno, California.

28

1   December 31, 2013 cannot be explained solely by the accumulation of interest.  On this basis,

2   USF&G requests that the Court disallow POC 17 in its entirety.  But the Court finds this argument

3   unpersuasive.

4         The Court heard testimony that the difference simply reflects a calculation of the debt using

5   different interest rates.  Rexford's books and records make references to an interest rate of 3.00%

6   between the years 2002 and 2005, but the 1979 Trust seeks to apply the interest rate provided in the

7   1979 Trust Note of 4.29% from the inception of the debt.  The Court addresses separately, in the

8   following section, whether this is the appropriate calculation.  Suffice it to say here, the Court is not

9   persuaded that the difference in calculation of the debt as between the 1979 Trust Note and Exhibit

10  A to POC 17 casts any doubt on the legitimacy of the underlying debt.

11         **C.  The Recalculation of Interest Accrued Before 2009 Is Not Appropriate.**

12        USF&G challenges the 1979 Trust's recalculation of interest at 4.29% from the inception of

13  the debt in 2000.  The Court finds this objection well taken.  The 1979 Trust Note states a principal

14  balance of $5,793,300.00 as of December 11, 2009.  The evidence makes clear that (i) the debt

15  originated in 2000 and (ii) that some amount of interest was included in the stated balance when, in

16  2009, the debt was first memorialized in the 1979 Trust Note.  The question is whether the 1979

17  Trust may turn back the clock and recalculate the interest accrued prior to December 11, 2009, and

18  effectively restate the balance of the note as of that date.  The Court concludes that it may not.

19        In support of its argument, the 1979 Trust cites California Civil Code section 1914.  That

20  statute presumes interest whenever a loan of money is made "unless it is otherwise expressly

21  stipulated at the time in writing."  But this principle does nothing to advance its argument.  Based

22  on the evidence submitted, it is clear that the December 11, 2009 principal balance stated in the

23  1979 Trust Note included some amount of interest accrued prior to that date.  Further, the 1979

24  Trust Note did not attempt to state the principal balance as of 2000 and provides for an interest rate

25  to be applied thereafter.  Thus, in seeking to recalculate the interest going back to the 2000

26  inception of the note, the 1979 Trust effectively asks the Court to rewrite it—something the Court

27  will not do.

28

**MEMORANDUM OF DECISION**

## V.    CONCLUSION

The 1979 Trust's claim will be allowed in the amount of $6,949,093.00, plus interest of 4.29%, compounded quarterly, from December 19, 2009 to June 16, 2015.  The 1979 Trust will be directed to submit a declaration setting forth its calculation of the claim in accordance with this memorandum, and USF&G will have an opportunity to object to such calculation before the Court enters its final order determining the allowed amount of POC 17 as of the Petition Date.

**MEMORANDUM OF DECISION**