**FOR PUBLICATION**

FILED & ENTERED

SEP 07 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>REXFORD PROPERTIES, LLC,<br><br>Debtor. | Case No.: 1:15-bk-12116-MB<br><br>Chapter 11<br><br>**MEMORANDUM OF DECISION RE: DEBTOR'S MOTION TO DETERMINE NON-INSIDER STATUS OF THE 1979 EHRLICH INVESTMENT TRUST AND LURLINE GARDENS LIMITED HOUSING PARTNERSHIP [Dkt. No. 262]** |

      On May 6, 2016, Rexford Properties, LLC ("Rexford") filed *Debtor's Motion to Determine Non-Insider Status of the 1979 Ehrlich Investment Trust and Lurline Gardens Limited Housing Partnership* (the "Motion"). Dkt. No. 262.  The Motion requests that the Court determine whether certain creditors, the 1979 Ehrlich Investment Trust (the "Trust") and Lurline Gardens Limited Housing Partnership, LP ("Lurline"), are insiders for purposes of voting for a chapter 11 plan pursuant to Bankruptcy Code section 1129(a)(10).  The purpose of seeking this relief now is to

**MEMORANDUM OF DECISION**

assist Rexford in formulating a confirmable chapter 11 plan.[1]  On May 13, 2016, creditor United States Fidelity & Guaranty Company ("USF&G") filed its *Opposition to Motion to Determine Non-Insider Status of the 1979 Investment Trust and Lurline Gardens Limited Housing Partnership* (the "Opposition). Dkt. No. 275.

On June 7, 2016, the Court held an evidentiary hearing on the Motion.  Following the June 7 hearing, the Court requested supplemental briefing from the parties and continued the hearing on the Motion to June 20, 2016.  The following constitute the Court's findings of fact and conclusions of law pursuant to Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure. For reasons discussed herein, the Court finds that: (i) the Trust is a non-statutory insider of Rexford, and (ii) Lurline is a statutory insider of Rexford, or in the alternative, a non-statutory insider of Rexford.  Accordingly, the Motion is DENIED.

## I.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).  This matter is a core matter under 28 U.S.C. § 157(b)(2)(A), and therefore, this Court has the constitutional authority to enter a final ruling on the matter. *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

## II.    FACTS

On June 16, 2015 (the "Petition Date"), Rexford, debtor and debtor in possession herein, filed its petition for relief under chapter 11 of the Bankruptcy Code.  Dkt. No. 1.  Rexford was formed by Richard Ehrlich ("Richard"),[2] now deceased.  Richard also formed several other business entities, including the Trust and Lurline.

---

[1]    Concurrently with the present motion, Rexford filed a separate motion under Fed. R. Bankr. P. 3013 seeking approval of a proposed plan classification scheme, to assist it in formulating a chapter 11 plan.  Although Rule 3013 addresses classification only, and does not provide a procedure for determination of the insider status of claims in advance of plan confirmation, the Court notes that neither USF&G nor any other party in interest objected to the Motion as procedurally improper.

[2]    Because multiple parties retain the same surname – Ehrlich – the Court refers to the parties by their first names to identify them.  No disrespect is intended by their first name references.

**A.  The Proofs of Claim**

On September 9, 2015, the Trust filed a timely proof of claim ("POC 17") for an unsecured debt of $9,738,190.02 (the "Trust Debt").  In support of the Trust Debt, POC 17 includes an installment note dated December 11, 2009 in the principal sum of $5,793,300.00 (the "Trust Note") and an unrecorded deed of trust securing the Trust Note to unknown real property (the "Trust DOT").[3]  Also attached to POC 17 is a chart entitled "Cash Flow Data," and a second chart entitled "Amortization Schedule," both of which show that between the years 2000 and 2007, the Trust advanced money to Rexford that resulted in the Trust Debt.  Both charts also show that the last payment Rexford made to the Trust was for $400,000.00 on December 11, 2009.

On September 9, 2015, Lurline filed a timely proof of claim ("POC 19") for an unsecured debt of $651,141.39 (the "Lurline Debt").  Similar to POC 17, in support of the Lurline Debt, POC 19 includes an installment note dated December 11, 2009 in the sum of $406,387.50 (the "Lurline Note") and an unrecorded deed of trust securing the Lurline Note to unknown real property (the "Lurline DOT").[4]  Also attached to POC 19 is a chart entitled "Cash Flow Data," and a second chart entitled "Amortization Schedule," both of which show that between May 2001 and October 2001, Lurline advanced money to Rexford that resulted in the Lurline Debt.  Both charts also show that the one and only payment Rexford made to Lurline was for $31,140.00 on May 15, 2006.

**B.  The Relationships between the Entities**

Because the relationships between Rexford, the Trust, Lurline, and Rexford's managing member, Lisa Ehrlich ("Lisa"), are complex, the Court found it helpful to chart the connections:

---

[3]   The Trust DOT indicates that the Trust Note is secured by real property "which has the address of Exhibit 'A'," but no such Exhibit A is attached.

[4]   The Lurline DOT indicates that the Lurline Note is secured by real property "which has the address of Exhibit 'A'," but no such Exhibit A is attached.

Table 1: Rexford's Corporate Structure as of the Petition Date



As shown in Table 1, the Trust currently holds a 1.00% interest in Rexford. Prior to 2000, the Trust was Rexford's majority interest holder. The trustee to the Trust is currently Donald Crasnick ("Crasnick"), who was a friend of Richard's, Lisa's stepfather. Lisa and her brother Stephen Ehrlich ("Stephen") are (i) income beneficiaries of the Trust and (ii) co-trustees of the Richard Ehrlich Q-Tip Trust ("Q-Tip Trust"), which is a 30.50 % interest holder in the Debtor. The income beneficiary of the Q-Tip Trust is Marcia Ehrlich, Lisa's mother. Lisa is herself a 38.00% interest holder in Rexford and is Rexford's managing member.

Table 2: Lurline's Ownership Interests as of the Petition Date[5]



As shown in Table 2, Lurline has no direct connection to Rexford. However, Lurline and Rexford share two of the same interest holders: Lisa and the Q-Tip Trust. Lurline is managed by the Q-Tip Trust, its general partner and 49.00% interest holder. As noted, the Q-Tip Trust is, in turn, managed by Lisa and Stephen as co-trustees. Lisa and Stephen also hold small ownership interests in Lurline.

### III.    LEGAL ANALYSIS

Insiders are those who have a "sufficiently close relationship with a debtor to warrant special treatment." *In re The Vill. at Lakeridge, LLC*, 814 F.3d 993, 999 (9th Cir. 2016). In the context presented, the insider status of the Trust and Lurline is relevant to whether their acceptances of a chapter 11 plan would satisfy the requirement of Bankruptcy Code section

---

[5]   Table 2 is based on the information provided in the *Declaration of Lisa Ehrlich* (the "Lisa Declaration") (Dkt. No. 265). The ownership interest percentages provided in the Lisa Declaration are either incorrect or incomplete as they only add up to 99.84%, not 100.00%. *See* Lisa Declaration at ¶5.

4
**MEMORANDUM OF DECISION**

1129(a)(10) that at least one class of claims accepts the plan, not counting the votes of insiders. The Ninth Circuit recognizes two kinds of insiders: (i) statutory insiders (those specifically listed among the examples given in Bankruptcy Code section 101(31)) and (ii) non-statutory insiders (those insiders that do not fit squarely within one of the examples provided in the text of section 101(31)). *Id.* The Court will address each of these alternatives in turn.

### A. Statutory Insiders

Bankruptcy Code section 101(31) provides a non-exhaustive list of "per se" or "statutory insiders." When the debtor is an individual, the term "insider" specifically includes: (i) a relative of the debtor or of a general partner of the debtor, (ii) a partnership in which the debtor is a general partner, (iii) a general partner of the debtor, or (iv) a corporation of which the debtor is a director, officer, or person in control. 11 U.S.C. § 101(31)(A).

When the debtor is a corporation, the term "insider" specifically includes: (i) a director of the debtor; (ii) an officer of the debtor; (iii) a person in control of the debtor; (iv) a partnership in which the debtor is a general partner; (v) a general partner of the debtor; or (vi) a relative of a general partner, director, officer, or person in control of the debtor.[6] 11 U.S.C. § 101(31)(B).

When the debtor is a partnership, the term "insider" specifically includes: (i) a general partner in the debtor, (ii) a relative of a general partner in, general partner of, or person in control of the debtor, (iii) a partnership in which the debtor is a general partner, (iv) a general partner of the debtor, or (v) a person in control of the debtor. 11 U.S.C. §101(31)(C).

---

[6] Rexford argues that section 101(31)(B), which illustrates who is considered an insider if the debtor is a corporation, does not apply to limited liability companies. However, section 101(9)(A)(4) defines a "corporation" to include unincorporated limited liability companies, such as Rexford. *In re Vill. at Lakeridge, LLC*, 2013 WL 1397447, at *4 n. 8 (B.A.P. 9th Cir. Apr. 5, 2013), *aff'd sub nom. In re The Vill. at Lakeridge, LLC,* 814 F.3d 993 (9th Cir. 2016), and *aff'd sub nom. In re The Vill. at Lakeridge, LLC,* 634 F. App'x 619 (9th Cir. 2016) (citing *In re Longview Aluminum, LLC*, 657 F.3d 507, 509 n. 1 (7th Cir. 2011)); *In re Parks*, 503 B.R. 820, 829 (Bankr. W.D. Wash. 2013) ("L.L.C.s fall within the 'corporation' definition of § 101(9)").

An insider also includes "an affiliate, or insider of an affiliate as if such affiliate were the debtor" or a "managing agent of the debtor." 11 U.S.C. §§ 101(31)(E), (F).

An affiliate means, in relevant part:

(A) Entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

    (i) In a fiduciary or agency capacity without sole discretionary power to vote such securities; or

    (ii) Solely to secure a debt, if such entity has not in fact exercised such power to vote; [or]

(B) Corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

    (i) In a fiduciary or agency capacity without sole discretionary power to vote such securities; or

    (ii) Solely to secure a debt, if such entity has not in fact exercised such power to vote. . . .

11 U.S.C. § 101(2).

### 1. The Trust

As of the petition date, the Trust did not fit any of the enumerated definitions of an insider as set forth in section 101(31)(B). Nonetheless, USF&G argues that the Trust should be considered a statutory insider because on the date that the Trust Debt first arose, in the year 1999, the Trust was Rexford's majority shareholder, and therefore, a per se insider pursuant to sections 101(31)(B) and (E). Rexford, on the other hand, argues that the Court should determine the Trust's status as of the petition date, and not when the Trust Debt first arose, which was almost 17 years ago.

In support of its argument, Rexford cites *In re The Vill. at Lakeridge, LLC*, 814 F.3d 993 (9th Cir. 2016). In *In re The Vill. at Lakeridge*, the Ninth Circuit affirmed the bankruptcy appellate panel's decision that a creditor does not automatically obtain statutory insider status upon purchasing a claim from an insider, especially where the relevant transaction was negotiated at arm's length. 814 F.3d at 1000. The court observed that "bankruptcy law distinguishes between the status of a claim and that of a claimant. Insider status pertains only to the claimant; it is not a property of a claim." *Id*. Thus, the court concluded that the insider status of a prior holder of the claim was not transferred to the new holder when the claim was transferred. *Id.* at 1000-01.

The decision in *In re The Vill. at Lakeridge* does not squarely support Rexford's argument. First, the case at bar does not involve the transfer of any claim. The Trust was at all times the owner of the Trust Debt and, as far the record reflects, the Trust Debt did not change hands from an insider to a non-insider. Second, the decision does not expressly hold, as Rexford has argued, that insider status should be determined at the time of voting, not at the time the debt arose. This temporal notion may have been an implicit consideration of the court in *In re The Vill. at Lakeridge*, but it was not express. The analysis in *In re The Vill. at Lakeridge* was focused on transfer of the claim at issue there and whether the transferor's insider status could be transferred with it.

Nevertheless, there is abundant persuasive authority that is clearly on point, expressly holding that insider status should be determined at the time of voting, not at the time the debt arose. *See In re 455 CPW Associates*, 2000 U.S. App. LEXIS at *19-20 (2d Cir. 2000); *In re Neogenix Oncology, Inc.,* 508 B.R. 345, 355 (Bankr. D. Md. 2014); *In re Locke Mill Partners*, 178 B.R. 697, 702 (Bankr. M.D.N.C. 1995); *In re MCorp. Fin. Inc*., 137 B.R. 219, 232 (Bankr.S.D.Tex.1992); *In re Gilbert*, 104 B.R. 206, 210-11 (Bankr. W.D. Mo. 1989); *In re Featherworks Corp*., 25 B.R. 634, 640 (Bankr. E.D.N.Y. 1982), *aff'd sub nom. Matter of Featherworks Corp*., 36 B.R. 460 (E.D.N.Y. 1984).

While the Trust may have been considered a statutory insider at one point in time under Bankruptcy Code sections 101(31)(B), (E), and (F), currently, the Trust does not fit any of those

definitions of a statutory insider.  Accordingly, the Court finds that the Trust is not a statutory insider of Rexford.

### 2. Lurline

USF&G's arguments regarding Lurline's status as an insider rest principally on the contention that Rexford conceded such status at the June 7, 2016 hearing on the Motion.  After reviewing the transcript of that hearing, the Court concludes that no such concession was made.  Nevertheless, for the reasons set forth below, the Court concludes that Lurline is a statutory insider of Rexford.  To be precise, Lurline is *an insider of an affiliate* within the meaning of Bankruptcy Code section 101(31)(E).

First, the Q-Tip Trust is an affiliate of Rexford.  As Table 1 indicates, the Q-Tip Trust is a 30.50% interest holder in the Debtor.  As such, the Q-Tip Trust is "an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor." 11 U.S.C. § 101(2).   In its Motion, Rexford argues that the co-trustees of the Q-Tip Trust are "heavily circumscribed" by IRS regulations and fiduciary duties in making decisions on behalf of the Q-Tip Trust.  But Rexford does not contest the only facts relevant to whether the Q-Tip Trust is an affiliate: that the Q-Tip Trust owns, controls, or holds the power to vote more than 20 percent of the equity interests in Rexford.

Second, Lurline is an affiliate of the Q-Tip Trust determined "as if [the Q-Tip Trust] were the debtor."  11 U.S.C. § 101(31)(E). As Table 2 shows, the Q-Tip Trust is the general partner and 49.00% interest holder in Lurline.  If, as the statute requires, the Q-Tip Trust is treated as if it was the debtor, then Lurline would be a "partnership in which the debtor is a general partner" and therefore an insider of the Q-Tip Trust.  *See* 11 U.S.C. §§ 101(31)(A)(ii), (B)(iv), (C)(iii).  As such, pursuant to Bankruptcy Code section 101(31)(E), Lurline would be (i) an insider of an affiliate of Rexford and (ii) therefore an insider of Rexford.

To be sure, it appears that the Q-Tip Trust probably would not be eligible to be a debtor in a bankruptcy case because it is a testamentary trust and not an individual, corporation, or partnership.  *See* 11 U.S.C. § 109(d); *see also* 11 U.S.C. §§ 101(9)(A)(v), 101(41); *In re Hunt,* 160 B.R. 131, 134-35 (B.A.P. 9th Cir. 1993).   But this is of no moment.  Nothing in Bankruptcy Code section

101(31)(E) requires that the affiliate of a debtor actually be eligible to file a bankruptcy case. It directs the Court to consider whether the subject party is an insider of the affiliate "*as if* the affiliate were the debtor." 11 U.S.C. § 101(31)(E) (emphasis added).

Likewise, it is of no moment that (i) Bankruptcy Code sections 101(31)(A), (B), and (C) specify per se insiders where the debtor is an individual, corporation, or partnership, respectively, and (ii) that the Q-Tip Trust is neither an individual, corporation or partnership. For purposes of section 101(31)(E), the Court must assume that the Q-Tip Trust is a debtor, and regardless of the type of debtor, the statute provides the same answer. Where the debtor (irrespective of its form) is a general partner in a partnership, that partnership is an insider of the debtor. *See* 11 U.S.C. §§ 101(31)(A)(ii), (B)(iv), (C)(iii).

Accordingly, the Court finds that Lurline is a statutory insider of Rexford.

### B. Non-Statutory Insiders

Determination of non-statutory insider status is a two-step process and made on a case-by-case basis, from the totality of the circumstances. *The Vill. at Lakeridge,* 814 F.3d at 1000. A creditor is a non-statutory insider if: (i) the closeness of its relationship with the debtor is comparable to that of the enumerated insider classifications in section 101(31), and (ii) the relevant transaction is negotiated at less than arm's length. *Id.* at 1001.

In determining whether a creditor and debtor share a close relationship, the Court considers a variety of factors including the degree of control and access to the debtor's inside information. *The Vill. at Lakeridge,* 814 F.3d at 1001-02. However, control and access are just two factors, and neither control nor access is required in determining insider status. *Id*. at 1001-02. Ultimately, the Court looks to see if the purported insider has a professional, business, or personal relationship with the debtor "where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to *affinity* rather than to the course of business dealings between the parties." *Id.* at 1005 *(quoting In re Enter.*

*Acquisition Partners, Inc.*, 319 B.R. 626, 631 (B.A.P. 9th Cir. 2004)); *Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*, 126 B.R. 63, 70 (B.A.P. 9th Cir. 1991)[7] (emphasis added).

The second step in determining non-statutory insider status requires determining whether the transaction in question was completed at arm's length. *The Vill. at Lakeridge,* 814 F.3d at 1001. A close relationship between the creditor and debtor, in and of itself, is insufficient for a finding of insider status. *Id*. An arm's length transaction requires a transaction between two parties, however closely related they may be, to be conducted as if the parties were strangers, so that no conflict of interest arises. *Id*. at 1001 n. 11 (citing *Black's Law Dictionary* (10th ed. 2014)).

### 1. The Trust

The Court finds that the closeness of the Trust's relationship with the debtor is comparable to those of the enumerated insider classifications in section 101(31) and sufficient to conclude that the Trust is a non-statutory insider of Rexford. As noted in Table 1, the Trust is only a 1.00% interest holder in Rexford. This is not enough to give the Trust "control" of Rexford for purposes of section 101(31)(B)(iii), or enough to render it an "affiliate" for purposes of sections 101(31)(E). But the connections between these entities render them "sufficiently close [to the] debtor to warrant special treatment" and "close enough to gain an advantage attributable simply to affinity." Lisa Ehrlich, one of the income beneficiaries of the Trust, also is a statutory insider of Rexford as she is Rexford's managing member and holder of a 38.00% equity interest in Rexford. Lisa is co-trustee of the Q-Tip Trust, which holds a 30.50% interest in Rexford and is an affiliate of Rexford. Further, Lisa has access to the Trust's books and records and oversees their maintenance by the

---

[7] Westlaw indicates that *In re The Vill. of Lakeridge, LLC*, 814 F.3d 993 (9th Cir. 2016) overruled *Friedman*. However, upon closer review, it appears *The Vill. of Lakeridge* is mistaken. *The Vill. of Lakeridge* states that *Friedman* was overruled on other grounds by *Zachary v. California Bank & Trust*, 811 F.3d 1191 (9th Cir. 2016). *The Vill. of Lakeridge*, 814 F.3d at 999. However, upon investigation, *Zachary* overruled a different case named "Friedman." *Zachary* overruled *In re Friedman*, 466 B.R. 471 (B.A.P. 9th Cir. 2012), not *Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*, 126 B.R. 63, 70 (B.A.P. 9th Cir. 1991).

Trust's bookkeeper, Carla Luiz, who is employed by OFC Management—an entity in which Lisa is either an officer or owner, or both.[8]

Rexford argues that the Trust has no control over the Debtor and that Lisa has no control over the Trust, because it is controlled by its own trustee, Crasnick. But these arguments miss the point. Non-statutory insider status does not turn exclusively on the existence or non-existence of control. As noted, the question is whether there is a relationship with the debtor "where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties."  *The Vill. at Lakeridge,* 814 F.3d at 1005.

That affinity is an important consideration to the determination of insider status (rather than control over the debtor) is reflected in the statute itself. For instance, under Bankruptcy Code section 101(31), a partnership in which the debtor is a general partner is an "insider." *See* 11 U.S.C. §§ 101(31)(A)(ii), (B)(iv), (C)(iii). A debtor-general partner typically would have fiduciary and other obligations to such a partnership, but no one could seriously contend that the partnership is in control of the debtor-general partner. Similarly, a general partner *of* the debtor (i.e., in some other partnership) is an insider under the statute, *see* 11 U.S.C. §§ 101(31)(A)(iii), (B)(v), (C)(iv), but no one could contend that such partner is in control of the debtor by virtue of that relationship. Nor could one contend that a relative of a debtor, general partner of a debtor, officer or director of a debtor, or person in control of the debtor, *see* 11 U.S.C. §§ 101(31)(A)(i), (B)(vi), (C)(ii), is an insider because a relative of such parties is necessarily in control of such parties. *See Three Flint Hill Ltd. Pshp. v. Prudential Ins. Co. (In re Three Flint Hill Ltd. Pshp.),* 213 B.R. 292, 299-30 (D. Md. 1997) ("Congress has conclusively presumed that transactions between relatives are "insider" transactions. Obviously, Congress has made this presumption because of the high probability that transactions between relatives will be motivated by affinity rather than independent business judgment.") The issue is one of affinity and the prospect of unfair advantage.

---

[8] Lisa testified that she was unsure whether she was an officer or owner, or both, of OFC Management.

Where, as here, the question of insider status is raised for purposes of how acceptances to a chapter 11 plan will be counted under Bankruptcy Code section 1129(a)(10), the significance of affinity—the closeness of the relationship—comes into sharper focus.  The purpose of requiring the acceptance of one impaired class of creditors, *not counting insiders*, is to ensure some measure of support for the chapter 11 plan from creditors whose only motivation is to maximize their interests as creditors of the estate.  The insider exclusion is meant to exclude those creditors who may be motivated to vote by their affinity to the debtor, or by the potentially conflicting interests that often come with a close relationship to the debtor—such as an interest in voting to retain one's job, retain control of the debtor, limit one's personal liability, and/or retain an equity interest in the debtor. *See In re Piece Goods Shops Co., L.P.,* 188 B.R. 778, 798 (Bankr. M.D.N.C. 1995) ("Where there is an affinity of interests between a creditor and the debtor, that creditor is less likely to cast a vote formed on an independent judgment of what will best serve his interests, much less those of his fellow class members");  Scott F. Norberg, *Debtor Incentives, Agency Costs, and Voting Theory in Chapter 11*, 46 U. Kan. L. Rev. 507, 539 (1998) ("the exclusion of insider votes under section 1129(a)(10) ensures that the required vote is not tainted by claimants' conflicting equity or employment interests in the firm [which] differ greatly from the interests of residual owners [i.e., creditors]").

The court in *In re Featherworks Corp.*, 25 B.R. 634, 640 (B.A.P. 1st Cir. 1982) aptly recognized this point:

> The purpose of the vote is to secure an expression from the creditors of where they think their best interest lies. An insider, like Hudson and Windsor, does not have the same interest as the creditors. The creditors will benefit only to the extent of their distributive share in the $40,000 to be paid out by Featherworks; Hudson and Windsor will benefit by retaining effective ownership of a functioning company which has been freed of all outstanding debts in payment for that $40,000. Hudson and Windsor are influenced by totally different considerations from those motivating the other creditors of Featherworks. The policy considerations underlying the disqualification of insiders apply most strongly to them. Their votes cannot be counted for purposes of § 1129(a)(10).

Thus, it is of no consequence that the Trust does not control Rexford or that Lisa does not control the Trust.  That Lisa is one of two income beneficiaries of the Trust and a party to whom Crasnick owes fiduciary duties in that capacity is enough to render the Trust a non-statutory insider

Case 1:15-bk-12116-MB    Doc 383    Filed 09/07/16    Entered 09/07/16 09:07:30    Desc
Main Document    Page 14 of 16

of Rexford. As noted, Lisa is a substantial equity holder in Rexford, its managing member, and co-trustee of the Q-Tip Trust, which is a substantial equity holder in Rexford, for the benefit of Lisa's mother, Marcia. Given these close relationships and interests, an affirmative vote by the Trust for any plan proposed by Rexford is not likely to reflect the sort of creditor support that section 1129(a)(10) is intended to measure.

The Court also finds that the transactions giving rise to the Trust Debt between the Trust and Rexford were not negotiated at arm's length. According to the exhibits attached in support of POC 17, the Trust Debt arose on January 1, 2000 – nearly ten years before it was memorialized in writing. The Trust made a series of loans between the years 2000 and 2009, with the last loan of $400,000.00 being made on December 11, 2009. It was not until Crasnick became trustee of the Trust in 2009 that anyone demanded documentation of the Trust Debt. This is not indicative of an arm's length transaction.

Likewise, the documentation that was ultimately prepared was not carefully prepared in the manner one would expect of parties to an arm's length transaction involving almost $6 million:

1. The Trust Note, for instance, alternatively suggests that the note would be due either in 2016 or 2031. (Crasnick testified that the latter was correct, but the documents do not say so unequivocally).
2. The Trust Note also fails to state expressly that the borrower under the note is Rexford rather than Lisa, who is the signatory.
3. The Trust DOT fails to state the year in which it was signed.
4. The Trust DOT was never notarized or recorded. Lisa testified that she did not realize the Trust DOT was not recorded until after Rexford filed for bankruptcy, and Crasnick testified that the first time he checked to see if the Trust DOT was recorded was sometime in the preceding six months.

Moreover, according to Crasnick, the Trust has never received a payment since the note was executed in 2009, and he has never made demand for payment other than to do so "orally," in a time, at a place, and in a manner that he did not specify.

13
**MEMORANDUM OF DECISION**

All of these circumstances lead the Court to conclude that the transactions that gave rise to the Trust Debt were not "conducted as if the parties were strangers," and therefore, were not at arm's length. *Black's Law Dictionary* (10th ed. 2014). Together with the closeness of the relationship between the Trust and the Debtor, the Court concludes on this record that the Trust is a non-statutory insider of Rexford.

### 2. Lurline

As reflected in Section III.A.2 above, the Court concludes that Lurline is a statutory insider because Lurline is an insider of the Q-Tip Trust, which is an affiliate of Rexford. Alternatively, the Court concludes that Lurline is a non-statutory insider of Rexford by virtue of the same close relationships and a lack of arm's length conduct in respect of the Lurline Debt.

The Court's finding of a close relationship comparable to those described in Bankruptcy Code section 101(31) is supported by the following facts: (i) the Q-Tip Trust is the general partner of Lurline and holder of a 49% interest in Lurline, (ii) the Q-Tip Trust is a 30.50% holder of the equity interests in Rexford, (iii) Lisa is co-trustee of the Q-Tip Trust, (iv) Lisa is the managing member of Rexford, and (iv) Lisa directly holds a small equity interest in Lurline. These connections establish that Lurline is "close enough to gain an advantage attributable simply to affinity," *The Vill. at Lakeridge,* 814 F.3d at 1005, and that any plan acceptance cast by Lurline is likely to reflect its myriad other interests (or those of its interest holders), rather than creditors generally.

The Court also finds that the transactions between Lurline and Rexford giving rise to the Lurline Debt were not negotiated at arm's length. First, according to the Cash Flow Data and Amortization Schedule attached as Exhibit A to POC 19, the Lurline Debt first arose on May 10, 2001. Lurline made additional loans to Rexford throughout the year, with the last loan of $100,000.00 being made on October 12, 2001. Like the loans from the Trust, the loans from Lurline were not memorialized until 2009. Unlike the loans from the Trust, however, Lurline never formally demanded a promissory note or deed of trust. Lisa testified that she had the Lurline documentation prepared at the time the Trust demanded documentation because she thought it "was a very good idea."

14
**MEMORANDUM OF DECISION**

1       The documentation that was ultimately prepared to memorialize the Lurline Debt, like that

2 of the Trust Debt, was not carefully prepared in the manner one would expect of parties to an arm's

3 length transaction: (i) the Lurline Note is internally inconsistent as to the maturity date, (ii) the

4 Lurline DOT fails to state the year it was signed, (iii) the Lurline DOT is not notarized, and (iv) the

5 Lurline DOT was never recorded.  Finally, according to the Cash Flow Data and Amortization

6 Schedule attached as Exhibit A to POC 19, it appears Rexford never made a single payment after

7 the Lurline Note was executed. All of these circumstances lead the Court to conclude that the

8 transaction giving rise to the Lurline Debt was not an arm's length transaction.

9       For all these reasons, even if Lurline is not a statutory insider of Rexford, the Court

10 concludes that Lurline is a non-statutory insider of Rexford.

## IV.   CONCLUSION

12       Based on the foregoing, the Court concludes that both the Trust and Lurline are "insiders"

13 for purposes of voting on a plan in this case pursuant to Bankruptcy Code section 1129(a)(10).  The

14 Motion therefore must be DENIED.

Date: September 7, 2016

*Martin R. Barash*

Martin R Barash
United States Bankruptcy Judge